IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. JOHN EDWARD MILLER, Defendant. | No. 1:20-cr-107-CJW-MAR<br><br>**DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO DISMISS INDICTMENT** |

Pursuant to Federal Rule of Criminal Procedure 12(b)(1) and 18 U.S.C. § 4241(d), Defendant John Edward Miller asks the Court to dismiss the indictment against him.

## I. FACTUAL BACKGROUND

On December 7, 2020, Mr. Miller was arrested on a complaint charging him with various crimes. (Docs. 2, 6.) The affidavit in support of the complaint alleged that Mr. Miller sent menacing and/or harassing messages to an Assistant United States Attorney and a U.S. Probation Officer and shot flare guns in the direction of the U.S. Courthouse in Cedar Rapids. (Doc. 2.) Four days after the filing of the complaint, U.S. Magistrate Judge Mark Roberts ordered Mr. Miller detained pending further proceedings. (Doc. 15.)

On January 4, 2021, Mr. Miller's counsel filed an unresisted motion for a competency evaluation pursuant to 18 U.S.C. §§ 4241(a) and 4247. (Doc. 20.)

One day after the motion for an evaluation, the grand jury returned a three-count indictment against Mr. Miller. (Doc. 29.) Count 1 charged Mr. Miller with threats against a federal officer, 18 U.S.C. § 115(a)(1)(B). Count 2 charged him with interstate communications made with intent to injure, 18 U.S.C. § 875(c). Count 3 charged him with malicious damage to a federal building, 18 U.S.C. § 844(f).

On January 6, 2021, the Court granted the unresisted motion for a competency evaluation. (Doc. 30.) The Court further ordered the Bureau of Prisons (BOP) to address whether Mr. Miller was insane at the time of the offense. (*Id.* at 2.) Citing 18 U.S.C. § 3161(h)(1)(A), the Court excluded for purposes of the Speedy Trial Act "the time from January 5, 2021 to the time th[e] Court rules on Defendant's competency . . . , except as may be attributable to unreasonable delays [in transportation] under Title 18, United States Code Section 3161(h)(1)(F)" or any delay "that otherwise violate[s] the Speedy Trial Act." (Doc. 30 at 4.)

The order committing Mr. Miller for a competency evaluation also contained deadlines. For instance, the order committed Mr. Miller to the BOP for a period not to exceed 45 days. (*Id.* at 2-3 (citing 18 U.S.C. § 4247(b)).) The order also required the U.S. Marshal to transport Mr. Miller within 10 days. (*Id.* at 3.) The order permitted the warden of the BOP facility to ask for a "reasonable extension" of the evaluation period not to exceed 15 days. (*Id.* at 3 (citing 18 U.S.C. § 4247(b).) Finally, the order stated that the examiner was required to prepare and file a report within 14 days of the conclusion of the evaluation. (*Id.* at 3.)

From the beginning, deadlines in Mr. Miller's case have been disregarded. On April 16, 2021, the government filed on the BOP's behalf an unresisted motion for an extension for the examination. (Doc. 34.) According to the letter from the warden of MCC Chicago attached to the government's motion (Doc. 34-1), Mr. Miller did not arrive at MCC Chicago until March 2, 2021—nearly two months after the Court's order. The facility did not commence his evaluation until March 24, purportedly due to a COVID-19 quarantine. The warden represented that with the requested extension, Mr. Miller's evaluation would be completed by June 7, and the Court would receive the report by June 28.

2

On April 20, 2021, the Court granted the request for an extension. The Court extended the evaluation period to June 7 and ordered the report filed by June 28. (Doc. 35.) The BOP did not ask for any further extensions.

Nonetheless, the BOP's report was finally filed on August 30, 2021—more than two months after the extended deadline. (Doc. 37.) The report was dated August 26 on the cover page,[1] and it stated that the evaluation period was March 24 to June 17, 2021. The report concluded that Mr. Miller was not competent to proceed to trial, but also that he "could be restored to competency within a reasonable period of time." (*Id.* at 18.) The report recommended commitment pursuant to 18 U.S.C. § 4241(d). (*Id.*) The addendum to the report contained an evaluation of Mr. Miller's sanity at the time of the offense, which concluded that he had been incapable of understanding the nature and quality or wrongfulness of his conduct. (Doc. 37-1.)[2]

On December 22, 2021, the Court held a competency hearing.[3] The only evidence presented at the hearing was the report from the BOP. Both parties agreed that Mr. Miller was not competent to stand trial. The Court adopted that conclusion and indicated that it would file an order committing Mr. Miller to the BOP for treatment in a suitable facility for a period not to exceed 120 days. (Doc. 53.)

The Court filed the order on December 29, 2021. (Doc. 54.) Pursuant to 18 U.S.C. § 4241(d), the order committed Mr. Miller "to the custody of the Attorney General to be

---

[1] The header on the subsequent pages of the report lists the date August 24, 2021.

[2] On August 31, 2021, Mr. Miller filed notice of his intent to rely on an insanity defense. (Doc. 38.)

[3] The Court granted multiple continuances of the hearing, mostly precipitated by efforts by Mr. Miller's counsel to facilitate an independent evaluation of Mr. Miller's competency.

3

hospitalized for treatment in a suitable facility for such reasonable period of time, not to exceed 120 days, as is necessary to determine whether there is a substantial probability that in the foreseeable future Defendant will attain the capacity to permit the proceedings to go forward." (*Id.* at 3.)

Months have passed since Mr. Miller's competency hearing, but he has yet to reach the BOP for an assessment as to the likelihood of his competency being restored. As of the filing of this motion, he remains at the Linn County Jail.[4]

## II. LEGAL ARGUMENT

Mr. Miller brings this motion to dismiss pursuant to Federal Rule of Criminal Procedure 12(b)(1), which permits a defendant to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits."

The government cannot detain an incompetent defendant for an indeterminate amount of time. In *Jackson v. Indiana*, 406 U.S. 715 (1972), the Supreme Court held that indefinite commitment violates the right to due process. According to *Jackson*, an incompetent defendant "cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity [to proceed to trial] in the foreseeable future." *Id.* at 738.

Congress enacted 18 U.S.C. § 4241(d) to codify the due process limitations delineated in *Jackson*. The "limited commitment mandated by § 4241(d) complies with due process limitations outlined" in *Jackson*. *United States v. Dalasta*, 856 F.3d 549, 554 (8th Cir. 2017). The statute provides:

---

[4] *See* Iowa Vinelink (last visited June 21, 2022).

> If, after the [competency] hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, **the court shall commit the defendant to the custody of the Attorney General. The Attorney General shall hospitalize the defendant for treatment in a suitable facility**—
>
> (1) **for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward**; and
>
> (2) for an additional reasonable period of time until—
>
>   (A) his mental condition is so improved that trial may proceed, if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward; or
>
>   (B) the pending charges against him are disposed of according to law; whichever is earlier.
>
> If, at the end of the time period specified, it is determined that the defendant's mental condition has not so improved as to permit the proceedings to go forward, the defendant is subject to the provisions of sections 4246 and 4248.

18 U.S.C. § 4241(d) (emphasis added). Under § 4241(d)(1), the government had a "reasonable period of time, not to exceed four months," to determine whether there is a "substantial probability" Mr. Miller could be restored to competency. Only if the government finds a substantial probability of restoration during the § 4241(d)(1) assessment, § 4241(d)(2) grants "an additional reasonable period" to restore the defendant to competency or dispose of the charges. Here, the government failed at the first step under § 4241(d)(1) because it failed to hospitalize him for "a reasonable period of time, not to exceed four months" to determine whether he could be restored. Instead, Mr. Miller has languished in the Linn County Jail since his competency hearing in December 2021.

To remedy this violation of § 4241(d) and Mr. Miller's right to due process, the Court should follow *United States v. Carter*, __ F. Supp. 3d ___, 2022 WL 483636 (D.D.C. Jan. 27, 2022). In *Carter*, as in this case, the court committed the defendant pursuant to § 4241(d). Like this case, the government failed to transfer the defendant to a BOP facility before the four-month deadline expired. *Id.* at *3.

*Carter* ruled that the delay violated § 4241(d). The court reasoned:

> In the government's view, [the Insanity Defense Reform Act (IDRA's)] four-month period does not begin until the "Defendant is [physically] hospitalized for treatment in a suitable facility." But the plain text of § 4241(d)(1) provides that the government "shall hospitalize" an incompetent defendant as soon as the government obtains "custody" over him. 18 U.S.C. § 4241(d)(1). The government obtained custody over Carter, within the meaning of that provision, on September 1, 2021. And § 4241(d)(1) does not mention delays in transporting defendants for hospitalization, let alone subject them to a different timetable. *See id.* Accordingly, to the degree that § 4241(d)(1) allows the government to delay defendants' transportation, those delays must be a part of the "reasonable period of time, not to exceed four months." *Id.* Likewise, the government may not delay the four-month deadline by detaining an incompetent defendant in a non-hospital setting.
>
> . . . . Under [the government's] reading, defendants in Carter's position would lack any statutory recourse against potentially indefinite delays in transporting them to a suitable facility. It is hard to imagine that Congress, which passed § 4241 to codify the Supreme Court's due process precedents[,] intended such a result.

2022 WL 483636, at *5-6 (citations omitted); *see also United States v. Moore*, No. 06-cr-00235-REB, 2008 WL 906035, at *3 (D. Colo. 2008) (unpublished order) ("[T]he four month period referenced in the statute begins to run from the date of the commitment order, not the date that the defendant is transported by the Bureau of Prisons to the facility where the hospitalization is to occur.")

*Carter* determined that civil commitment proceedings or dismissal of the indictment were the appropriate remedies for a violation of § 4241(d). Although § 4241(d) does not expressly prescribe a remedy, *Jackson* suggested that those were the only two possibilities for a defendant

6

who could not be restored to competency in a reasonable period. *Carter*, 2022 WL 483636, at *7 (citing *Jackson*, 406 U.S. at 738). Moreover, *Carter* reasoned that those outcomes are consistent with § 4241(d), which states that a defendant who cannot be restored "is subject to the [commitment] provisions of sections 4246 and 4248." 2022 WL 483636, at *7 (quoting § 4241(d)).

There is contrary authority, but it is not persuasive. Such cases isolate the term "hospitalize" in § 4241(d) and conclude that the four-month period does not commence until the defendant arrives at the BOP facility for treatment (*i.e.*, is hospitalized).[5] As *Carter* concluded, however, § 4241(d) requires the government to hospitalize the defendant to assess the likelihood of restoration for no longer than four months from the date of the Court's order. It does not authorize the government to delay the four-month period for transportation or other logistical reasons. *Cf.* 18 U.S.C. § 3161(h)(1)(F) (excluding from speedy trial calculations up to 10 days of transportation time). Rather, the statute requires the government to commence hospitalization

---

[5] *See, e.g.*, *United States v. Donnelly*, No. 3:21-cr-232-SI, 2022 WL 1488430, at *2 (D. Or. May 11, 2022) (unpublished) ("The statute's reference to the four-month limitation appears only in the sentence beginning 'The Attorney general shall hospitalize . . .' and, read in context, applies only to that period of hospitalization and not the total period of time that a defendant has been 'committed' to the Attorney General."), *appeal pending*, No. 22-30081 (9th Cir.); *United States v. Belgrade*, No. 3:21-cr-58, 2022 WL 540932, at *4 (D.N.D. Feb. 23, 2022) (unpublished) (citing *United States v. Villegas*, 589 F. App'x 372 (9th Cir. 2015) (unpublished), and *United States v. Magassouba*, 544 F.3d 387, 408 (2d Cir. 2008)).

The Eighth Circuit has never addressed this question, but the government will likely rely on *United States v. Ecker*, 30 F.3d 966 (8th Cir. 1994), for the proposition that Mr. Miller lacks a remedy. In *Ecker*, the defendant challenged his commitment under § 4246 on the basis that he was subjected to multiple § 4241(d) evaluations over more than three years. *Id.* at 967-68. The Court rejected the defendant's challenge. *Id.* at 970. Unlike this case, however, multiple § 4241(d) evaluations were ordered based on the unique circumstances in the case, and the government transferred the defendant multiple times due to his "fixations." *Ecker* did not hold that the government has an interminable period of time to conduct a single § 4241(d)(1) evaluation.

immediately. If § 4241(d) were construed otherwise, the government could *indefinitely* detain an incompetent defendant, so long as he never reaches a BOP medical facility for restoration to trigger the four-month period. *Carter*, 2022 WL 483636, at *6.

To the extent that a § 4241(d)(1) violation can be harmless, *see id.* at *8, it is not in this case. The BOP examiner has concluded that Mr. Miller was insane at the time of the offense and thus not criminally responsible for his mental-illness-caused conduct. Thus, the delay in the § 4241(d)(1) evaluation and Mr. Miller's extended stay in county jail is likely delaying appropriate mental health treatment. It is also delaying civil commitment proceedings, should the government choose that route. And this is not the first time that the government has ignored deadlines; it failed to comply with the deadlines set for Mr. Miller's initial competency evaluation. Additionally, the purported reason for the latest delay—a lack of bed-space in a BOP medical facility—is a hollow excuse and an outcome that the BOP could have easily avoided had it expended a sufficient portion of taxpayer resources to address mental health issues.

As it is, Mr. Miller is languishing for no good reason. Due process requires more.[6]

### III. CONCLUSION

For the foregoing reasons, the Court should follow *Carter* and dismiss the indictment against Mr. Miller.

---

[6] The undersigned attorney also believes that the government has violated Mr. Miller's statutory and constitutional rights to a speedy trial. If necessary, Mr. Miller will pursue a subsequent motion for dismissal on that ground.

8

Respectfully Submitted,

 */s/ Brad Hansen*
FEDERAL PUBLIC DEFENDER'S OFFICE
400 Locust Street, Suite 340
Des Moines, Iowa 50309-2353
PHONE: (515) 309-9610
FAX: (515) 309-9625
E-MAIL: brad_hansen@fd.org
ATTORNEY FOR DEFENDANT

CERTIFICATE OF SERVICE

I hereby certify that on June 21, 2022, I electronically filed this document with the Clerk of Court using the ECF system, which will serve it on the appropriate parties.

 */s/ Theresa McClure*