IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>v.<br><br><br>JOHN EDWARD MILLER,<br><br>　　　　Defendant. | No. 1:20-cr-107-CJW-MAR<br><br>**DEFENDANT'S SENTENCING MEMORANDUM AND BRIEF IN SUPPORT OF MOTION FOR DOWNWARD DEPARTURE OR VARIANCE** |

Defendant John Edward Miller faces sentencing after his guilty plea to threats against a federal official, 18 U.S.C. § 115(a)(1)(B) (Count 1), and interstate communications with intent to injure, 18 U.S.C. § 875(c) (Count 2).

At sentencing, the Court will need to decide (1) whether to sustain Mr. Miller's objection to the six-offense-level, victim-related enhancement pursuant to USSG § 3A1.2(b); and (2) whether to depart under USSG § 5H1.3 or vary downward under 18 U.S.C. § 3553(a) based on Mr. Miller's severe mental health problems. This memorandum will address the issues in reverse order, because the latter helps contextualize the former.[1]

I. **WHATEVER THE GUIDELINE RANGE IS, THE COURT SHOULD DEPART OR VARY DOWNWARD TO ACCOUNT FOR MR. MILLER'S SEVERE MENTAL ILLNESS.**

The Court has two ways to account for Mr. Miller's severe mental health issues. It could depart downward pursuant to USSG § 5H1.3, which provides that "[m]ental and emotional conditions may be relevant in determining whether a departure is warranted, if such conditions, individually or in combination with other offender characteristics, are present to an unusual degree

---

[1] Mr. Miller does not intend to offer any testimony at the hearing, but he will offer at least one letter of support as an exhibit.

and distinguish the case from the typical cases covered by the guidelines." The Court may also vary based on 18 U.S.C. § 3553(a), which requires consideration of a defendant's "history and characteristics," the "nature and circumstances" of his offense, and the need to provide the defendant with "correctional treatment in the most effective manner," among other things. *See generally United States v. Chase*, 560 F.3d 828, 831-32 (8th Cir. 2009) (holding that a court may vary even in circumstances where it deems a departure inappropriate).

Either way, the sentence should account for Mr. Miller's severe mental illness and the impact it has had on his life and behavior. Mr. Miller's mental health diagnoses and treatments are well-documented in the PSR. (PSR ¶¶ 106-112.) Based on those mental health problems, Mr. Miller was previously incompetent to proceed in this case and required extended hospitalization for restoration of his competency. (*See* Doc. 64, pp. 1-2.) Mr. Miller's competency examiner also opined that Mr. Miller's mental health problems were severe enough that he was "unable to appreciate the nature and quality or the wrongfulness of his actions at the time of the . . . offenses." (*Id.*, p. 2 (quoting Doc. 37-1, p. 7).)

Mr. Miller's competency was restored, and he pled guilty to his crimes, but that does not change the fact that his mental health problems strongly influenced his behavior. And, no question, the behavior was concerning: He sent a bizarre, incoherent message ("the flare guns are at most what a fake warning meeting of f*** you feds") to an AUSA whom he knew because she previously prosecuted him as a county prosecutor in a harassment case that involved his neighbor. Mr. Miller harbored frustration with the AUSA because he had wanted her to facilitate a DNA test

to verify the neighbor's child was his.² The message also mentioned a Deputy U.S. Marshal, a USPO, and a judge—none of whom he had an apparent connection to, though he had previously sent several unsolicited and harassing communications to the USPO. (*See* PSR ¶¶ 6-7, 11.)

Apparently seeking to draw attention to his incoherent concerns, Mr. Miller ultimately shot two flares in the direction of the U.S. Courthouse in Cedar Rapids. One of the flares landed harmlessly across the street from the courthouse. The other made it across the street and caused a small fire involving the portable barriers well in front of the courthouse. The fire was quickly extinguished, and no one was hurt. (*See id.* ¶ 8.) The fire caused $760 worth of damage to the barriers. (*Id.* ¶ 13.)

Mr. Miller was arrested two days after the flare gun incident. (*See id.* ¶¶ 10, 86.) He promptly confessed. (*See id.* ¶ 11.) Despite his quick confession, he has been detained for nearly three years awaiting a resolution to his case, due to his incompetency and the BOP's inept handling of his hospitalization for restoration. (*See* Doc. 60-1.) In any event, Mr. Miller has handled his lengthy pretrial and presentencing detention well, and he heads into his sentencing hearing with stability in his mental health.

Admittedly, this is not Mr. Miller's first interaction with the criminal justice system, and his criminal history is significant. Some of it can likely be attributed to his mental health ("The defendant appeared confused, he did not know what day of the week it was and made statements concerning God and the devil and his power to send people to hell." (PSR ¶ 69.)). Mr. Miller's tendency to self-medicate with drugs and alcohol (*see id.* ¶¶ 114-120) probably also explains some

---

² The AUSA also prosecuted Mr. Miller's brother in state court for murder, but there is no indication that the defendant was aware of that. (*See* PSR ¶¶ 7, 11.)

3

of his history, including his OWIs and drug possession convictions.  But Mr. Miller understands and accepts that his convictions for various forms of assault, interference with official acts, and harassment do not place him in the best light.

Nevertheless, Mr. Miller's upcoming term on federal supervised release provides him with the best opportunity to maintain stability.  He will be subject to conditions requiring his compliance with a mental health treatment program, including a medication regimen.  (*Id.* ¶ 158.)  He will also be monitored for drug and alcohol use, which will mitigate the risk of self-medication.  (*Id.* ¶¶ 159-160.)  Any violations could result in a return to prison.

In sum, although Mr. Miller's case involves aggravating factors and disturbing behavior, his mental conditions "are present to an unusual degree and distinguish the case from the typical case[]."  USSG § 5H1.3.  The Court should account for that by departing or varying downward.

## II.     THE COURT SHOULD NOT APPLY THE SIX-OFFENSE-LEVEL ENHANCEMENT PURSUANT TO USSG § 3A1.2(b) BECAUSE MR. MILLER WAS NOT MOTIVATED BY THE AUSA'S STATUS AS A GOVERNMENT OFFICIAL OR EMPLOYEE.

Before deciding whether to depart or vary, the Court must decide whether the PSR correctly attributes a six-offense-level enhancement to Mr. Miller.  (PSR ¶ 18.)  That enhancement is pursuant to USSG § 3A1.2(b), which requires proof that "(1) the victim was (A) a government officer or employee; (B) a former government officer or employee; or (C) a member of the immediate family of a person described in subdivision (A) or (B); *and* (2) the offense of conviction was motivated by such status."  USSG § 3A1.2(a) (emphasis added).

The dispute centers on whether the government can prove by a preponderance that Mr. Miller's threatening behavior to the AUSA was "motivated by such status."  According to the commentary, that "means that the offense of conviction was motivated by the fact that the victim

4

was a government officer or employee, or a member of the immediate family thereof." USSG § 3A1.2 comment. n.3.[3] Naturally, this requires proof that the defendant knew that the victim was a current or former government officer or employee. *United States v. Solorzano*, 832 F. App'x 276, 282 (5th Cir. 2020) (unpublished). But such knowledge alone is insufficient, according to the commentary: "This adjustment would not apply, for example, where both the defendant and victim were employed by the same government agency and the offense was motivated by a personal dispute." USSG § 3A1.2 comment. n.3. "Section 3A1.2 does not apply where the crime at issue does not relate to an officer's status, even if the officer was harmed." *United States v. Kohut*, 553 F. Supp. 3d 964, 969-71 (D.N.M. 2021) (collecting cases and holding that although defendant knew that he was assaulting a postal worker, "there is no evidence in the record to suggest that Mr. Kohut's actions were motivated by anything other than symptoms of his mental illness and a desire for a cigarette").

Here, although Mr. Miller knew that the AUSA was a current federal prosecutor and former county prosecutor, his offense of conviction was not motivated by her "status." Rather, as in *Kohut*, Mr. Miller's "persecutory delusions and auditory and visual hallucinations appear to have played a direct role in the commission of the . . . offenses." (Doc. 37-1, p. 7.) At the time of his arrest, he admitted that he was upset with her for not coordinating a DNA test—a duty that no rational person would associate with a prosecutor. And although he sent the AUSA a message

---

[3] The Eighth Circuit has held that "government officer or employee" includes state officials. *United States v. Stewart*, 20 F.3d 911, 918 (8th Cir. 1994). Additionally, "[s]ection 3A1.2(a) explicitly provides that its enhancement for the status of the victim as a government official is proper only where the 'offense of conviction' is motivated by the victim's status." *United States v. Drapeau*, 121 F.3d 344, 349 (8th Cir. 1997). In this case, only Mr. Miller's motivation with respect to the AUSA matters for § 3A1.2; his conduct toward the USPO, Deputy U.S. Marshal, and judge does not pertain to the "offense of conviction."

with an expletive directed at "feds," the message was nonsensical and not evidence of a motivation. Moreover, the report from Mr. Miller's competency examination is rife with incoherent explanations for his conduct. (*See, e.g.*, *id.*, pp. 2-7 ("He stated he felt the voices had him 'hooked to the US satellites; they can see you in front of me. I can hear 'em speak and they can hear me talk to 'em.'").)

To summarize, although Mr. Miller threatened the AUSA and impeded her official duties, *see* 18 U.S.C. § 115(a)(1)(B), he was not motivated to do so because of her status as a prosecutor. The six-level enhancement under § 3A1.2(b) does not apply.

\* \* \*

### Summary

The Court should sustain Mr. Miller's objection to paragraph 18 of the PSR. Mr. Miller's guideline range is 41 to 51 months' imprisonment (total offense level 15, criminal history category VI).

Regardless, the Court should depart downward pursuant to USSG § 5H1.3 or vary downward under 18 U.S.C. § 3553(a).

The Court should impose a sentence of time-served, with a three-year term of supervised release, no fine, and $760 in restitution.

If the Court orders a further prison sentence, Mr. Miller requests a recommendation that he serve any sentence at a Federal Medical Center suitable to address his unique mental health needs.

6

Case 1:20-cr-00107-CJW-MAR    Document 102-1    Filed 08/31/23    Page 6 of 7

Respectfully Submitted,

*/s/ Brad Hansen*
FEDERAL PUBLIC DEFENDER'S OFFICE
400 Locust Street, Suite 340
Des Moines, Iowa 50309-2353
PHONE: (515) 309-9610
FAX: (515) 309-9625
E-MAIL: brad_hansen@fd.org
ATTORNEY FOR DEFENDANT

CERTIFICATE OF SERVICE

    I hereby certify that on August 31, 2023, I electronically filed this document with the Clerk of Court using the ECF system, which will serve it on the appropriate parties.

*/s/ Theresa McClure*